# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James H. Alesia | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 7202 | **DATE** | July 12, 2001 |
| **CASE TITLE** | *Household Financial Services, Inc. vs. Coastal Mortgage Services, Inc.* | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for July 26, 2001 at 9:30 a.m.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The court denies defendant's motion for summary judgment [15-1]. The court grants in part and denies in part plaintiff's motion for summary judgment [13-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| ✓ | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

| CW | courtroom deputy's initials |
|---|---|

number of notices

JUL 1 3 2001
date docketed

docketing deputy initials

date mailed notice

01 JUL 12 PH 5: 47
Date/time received in central Clerk's Office

mailing deputy initials

Document Number

26

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HOUSEHOLD FINANCIAL SERVICES, INC.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **Case No. 99 C 7202** |
| **COASTAL MORTGAGE SERVICES, INC.,** | ) ) ) | **Judge James H. Alesia** |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are (1) plaintiff Household Financial Services Inc.'s ("Household") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and (2) defendant Coastal Mortgage Services, Inc.'s ("Coastal") motion of summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, the court (1) grants in part and denies in part Household's motion for summary judgment and (2) denies Coastal's motion for summary judgment.

## I. BACKGROUND[1]

Plaintiff Household, a Delaware corporation with its principal place of business in Illinois, acquires and services mortgage loans originated by other brokers or lenders. Defendant Coastal, a North Carolina corporation with its principal place of business in North Carolina, is

---

[1] Unless otherwise indicated, the following facts are taken from the parties' "Joint 12(m) Statement of Undisputed Facts." The court notes that former Local General Rule 12(m) has been renumbered. Thus, the proper rule is Local Rule 56.1.

a mortgage broker which originates mortgage loans and then sells those loans to companies like Household. In April 1996, Household and Coastal entered into a Continuing Loan Purchase Agreement ("Purchase Agreement"). The current controversy arises out of the relationship between Household and Coastal as established by the Purchase Agreement. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

Household has filed a one-count complaint against Coastal for breach of contract. In turn, Coastal filed a two-count counterclaim. Count I is for breach of contract. Count II is a claim for breach of duty of good faith and fair dealing. Also, in its answer, Coastal has alleged the following affirmative defenses: (1) Household failed to comply with its contractual obligations; (2) Coastal cured any breach or deficiencies; (3) Household waived its present claim by failing to object to the purchase of the loans in question; and (4) Household's present claim is estopped.

In order to understand this court's opinion, one must be aware of a number of facts. For the sake of clarity, a recitation of these facts is in three parts. Part A discusses the nature of the relationship between Household and Coastal. Part B discusses the terms of the Loan Purchase Agreement entered into between Household and Coastal. Part C discusses events which give rise to the current controversy.

## A.    Relationship between Household and Coastal

Defendant Coastal is a mortgage company which issues original loans. Those loans are then often sold to investors, either on an individual basis or as part of a large bulk loan package. Household is just such an investor. For several years, Household has purchased loans from Coastal. In order to effectuate such sales, on April 11, 1996, Household and Coastal entered into

2

a Purchase Agreement to govern the loan sales between the two companies. The Purchase Agreement provided a structured procedure for transactions between the parties. Initially, Coastal is supposed to submit a written offer to sell certain loans. Under the Purchase Agreement, this written offer should contain detailed information about each loan offered for sale. This includes information regarding the status of the current balance of each loan, the number of payments made on each loan contained for sale in the bulk package, the unpaid principal balance of each loan, and the dates to which the principal and interest have been paid.

After receiving the written offer, Household would then have a period of time for due diligence. Following the due diligence period, Household would submit a written response to the information received, which is supposed to include any loans Household wishes to exclude from the bulk sale and Household's proposed purchase price. Then, Coastal would execute an acceptance of Household's response. This foregoing procedure is established within the Purchase Agreement.

However, the procedures contained in the Purchase Agreement were not adhered to in reality. In fact, the majority of the bulk loan package sales were not made in conformance with the Purchase Agreement. According to Coastal, it generally did not submit an offer to sell. Accordingly, it did not provide the information which, under the Purchase Agreement, it was supposed to provide with such an offer to sell. Further, Household did not submit a written response to the office but instead communicated verbally with Coastal. Coastal claims that the bulk packages were sold in the following manner.

Coastal would fax a spreadsheet to various investors containing information about the various bulk loan packages (including the principal balance, interest rate, and the loan to value ratio). Then, the investors would make a bid on the bulk sale package. Generally, Household would make this bid orally. Next, Coastal would determine whether or not to accept this bid. If Household's bid was accepted, then Coastal would send the contents of the loan origination file, which includes a copy of the original promissory note for the loans. However, the documents required under the Purchase Agreement were not all sent. Household would then evaluate the contents of the loans contained in the bulk package. During the evaluation, if deficiencies were found, Household would demand that they be cured by Coastal. Also, during the evaluation, Household would identify which individual loans it wanted to exclude from the bulk sale package. Household's bid would then be adjusted to reflect its evaluated value of the package. Once the evaluation process was completed, which included Coastal clearing any deficiencies, Household would submit a final purchase advice. Once this was approved by Coastal, Household would wire the funds to Coastal. Prior to July 1999, Coastal claims that every bulk loan package bid on by Household was completed using the above, informal procedure.

**B.** **Loan Purchase Agreement**

On April 11, 1996, the parties entered into the Loan Purchase Agreement. The Purchase Agreement was drafted by Household, but both parties were represented by counsel during the preparation of that agreement. Paragraph 2.1 of the Purchase Agreement set forth the procedure for initiating the sale of a bulk loan package. Specifically, paragraph 2.1(b) stated that:

> Each offer shall be sent by hand delivery or overnight courier and shall be accompanied by a letter notifying Buyer [Household] that Seller [Coastal] is making an offer to sell the Offered Loans at a Purchase Price based on a Bid Percentage, which shall be determined by Buyer and which shall be subject to acceptance by Seller. Each Offer shall attach an Offered Loan Schedule, which shall include mapping document information relating to each Offered Loan according to the Format and criteria set forth in Schedule 2.1 to this Agreement.

(Joint 12(m) Statement, Ex. 1 at ¶ 2.1(b).) Schedule 2.1 was to include information about each loan contained in the bulk package, including first payment due date, current principal interest payment amount, next payment date, current balance, and original balance. (*See id.*)

Further, pursuant to section 12.2 of the Purchase Agreement, that Agreement "may not be amended, modified, or supplemented except in writing signed by both parties." (*Id.* at ¶ 12.2.) It is undisputed that the parties never amended or modified the Agreement in writing, nor did the parties specifically state that they intended to modify the Agreement. However, Coastal contends that the Purchase Agreement was modified by the parties' course of performance and conduct. (*See* Def.'s Supp. 12M Statement at ¶ 1.)

The Purchase Agreement also contains provisions and warranties for the loans sold by Coastal to Household. Specifically, section 4.3(c) of the Purchase Agreement states that Coastal represents that "the first Monthly Payment has been made, or shall be made, as the case may be, with respect to the Loan on its Due Date." (Joint 12(m) Statement, Ex. 1 at ¶ 4.3(c).) Further, the term "Due Date" is defined in the Purchase Agreement as "the day of the month on which each Monthly Payment is due on a Loan, exclusive of any days of grace." (*Id.* at ¶ 1.1.)

In the event of a breach by Coastal of a warranty or representation made in the Agreement, the Purchase Agreement also provides a provision requiring Household to give

notice of the breach requesting that Coastal cure that breach within thirty days, and that if the breach is not cured within thirty days, Coastal shall repurchase the loan at issue. (*Id.* at ¶ 9.1.) The Purchase Agreement contained no exceptions to the notice and opportunity to cure provision.

## C.     Events Giving Rise to the Current Claims

In November 1998, Coastal sent a spreadsheet to Household listing seventeen mortgage loans for sale as a package. Included in this list was a loan to Eugene Hunter (the "Hunter loan") and a loan to McArthur Kelley (the "Kelley loan"). After receiving the spreadsheet, Household submitted a preliminary bid to Coastal. Coastal then transmitted the original loan documents for each of the seventeen loans in the package to Household so that Household could audit the loans and determine a final purchase price. On December 10, 1998, Household faxed a Purchase Advice to Coastal which listed various information about the seventeen loans, including a "Interest Paid To" column for each of the loans. Under that "Interest Paid To" column, the date for the Hunter and Kelley loans was December 1, 1998. Further, that Purchase Advice contained a "Current Balance" column which listed the current balance (as of December 11, 1998) on both the Hunter and Kelley loans as the same as the original principal balance shown on the promissory note.

Although the Purchase Advice was sent for the December 1998 bulk package, Coastal never transmitted to Household an "Offer to Sell" as that term in defined by the Purchase Agreement. Further, Household never transmitted to Coastal a "Buyer's Response" as that term is defined by the Purchase Agreement. Further, nothing in the loan documents relating to the

Hunter or Kelley loans indicated that the borrower had not made the first payment. After the Purchase Advice was sent on December 10, 1998, Mark Starnes ("Starnes"), an underwriter from Coastal, reviewed that Purchase Advice, signed it and returned it to Household. Household then purchased the seventeen loans in the bulk package from Coastal on December 11, 1998.

As stated above, this bulk loan package contained the Hunter loan. The first payment for the Hunter loan was due on December 1, 1998. However, the borrower did not make his first payment on December 1, 1998. In fact, the borrower on the Hunter loan made his first payment in the amount of $2,707.10 on March 29, 1999. Household applied $1,353.55 to the payment that was due December 1, 1998 and $1,353.55 to the payment that was due January 1, 1999. On April 7, 1999, the borrower on the Hunter loan made another payment which was applied to the payments due on February 1, 1999 and April 1, 1999.

In a letter dated March 5, 1998, Household requested that Coastal repurchase this loan due to a breach of Section 4.3(c) of the Purchase Agreement; this letter did not provide Coastal with an opportunity to cure. Coastal never repurchased the Hunter loan from Household. Due to the borrower's continued failure to make payments on the Hunter loan, Household foreclosed on that loan and sold the property.

Likewise, the due date for the first payment on the Kelley loan was December 1, 1998. Again, the borrower on the Kelley loan did not make his first payment on December 1, 1998. The borrower made his first payment in the amount of $1,710.49 on May 27, 1999. Household applied that amount to the payment due December 1, 1998. Then, on September 24, 1999, the borrower on the Kelley loan made a payment which was applied by Household to the amount

due January 1, 1999. Household also received a payment in December 1999 which it applied to those payments due February 1, 1999 and March 1, 1999.

In a letter dated May 17, 1999, Household requested that Coastal repurchase the Kelley loan due to a breach of Section 4.3 of the Purchase Agreement; the letter did not provide Coastal with an opportunity to cure. Coastal never repurchased the Kelley loan. The borrower on the Kelley loan subsequently declared bankruptcy which resulted in a restructuring of the Kelley loan in April 2000.

In another transaction between Household and Coastal, a spreadsheet was sent to Household in April 1999 which listed twenty-one loans to be sold as a package. This April 1999 transaction was conducted by Household and Coastal in the same manner as the transaction in December 1998. Included in this April 1999 package was a loan to Betty McCummings (the "McCummings loan"). The due date for the first payment on the McCummings loan was May 1, 1999. However, the borrower did not make the first payment on May 1, 1999. The first payment on the McCummings loan was made on July 28, 1999 which was applied to the payment due on May 1, 1999.

In a letter dated September 15, 1999, Household requested that Coastal repurchase the McCummings loan due to a breach of Section 4.3 of the Purchase Agreement; the letter did not provide Coastal with an opportunity to cure. Coastal never repurchased the McCummings loan. However, the borrower on the McCummings loan has continued to make timely payments and that loan is currently paid-to-date.

Despite these problems, Household and Coastal continued to negotiate the sale of other bulk loan packages. In fact, Household purchased a bulk loan package from Coastal on June 30, 1999. At the same time, the two parties were still discussing the repurchase of the Hunter and Kelley loans. Then, in July 1999, Coastal submitted another bulk loan package. After agreeing on a preliminary price, near the completion of the sale of the July 1999 package, Household indicated that it would not complete that purchase unless Coastal either repurchased the Hunter and Kelley loans or agreed to offset the repurchase price of those loans against the purchase price of the July 1999 package. No Purchase Advice was sent by Household regarding the July 1999 package, and that transaction was never completed.

In its complaint for breach of contract, Household seeks to force Coastal to repurchase the Hunter, Kelley and McCummings loans. In its counterclaim for breach of contract and for breach of duty of good faith and fair dealing, Coastal seeks damages for the lost sale of the July 1999 package. Both parties have brought motions for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## II. DISCUSSION

**A.** **Standard for deciding a motion for summary judgment**

A motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material facts exists for trial when, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-

moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). However, "self-serving assertions without factual support in the record will not defeat a motion for summary judgment." *James v Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998) (citing *Jones v. Merchants Nat'l Bank & Trust Co.*, 42 F.3d 1054, 1058 (7th Cir. 1994)).

The burden is on the moving party to show that no genuine issues of material fact exist. *Anderson*, 477 U.S. at 256; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party presents a prima facie showing that it is entitled to judgment as a matter of law, the non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing that a genuine issue for trial exists. *Anderson*, 477 U.S. at 256-57; *Celotex*, 477 U.S. at 324; *Schroeder v. Luftansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). When deciding cross-motions for summary judgment, the standard is the same as that for individual motions for summary judgment, and the court must consider each motion independent of the other. *See LDI Corp. v. Investor Group Leasing Ltd.*, No. 95 C 5244, 1997 WL 733891, at *3 (N.D. Ill. Nov. 17, 1997). Each party must establish that no issues of material fact exist, and therefore it is entitled to judgment as a matter of law.[2] *Id.*

---

[2]In a diversity case, the court must apply state substantive laws. *Dawn Equip. Co. v. Micro-Teak SYS., Inc.*, 186 F.3d 981, 986 (7th Cir. 1999). Further, the parties agree that this dispute is governed by Illinois law (*see* Joint 12(m) Statement, Ex. 1 at ¶ 12.11), and both parties reference Illinois law in their briefs. Thus, the court will apply Illinois contract law to the present case.

**B.**   **Household's motion for summary judgment on its breach of contract claim**

In its motion for summary judgment, Household argues that it is entitled to judgment as a matter of law on its breach of contract claim. Specifically, Household argues that the loans purchased under the Purchase Agreement were not in compliance with the terms of the Purchase Agreement and, therefore, Coastal breached that Agreement when it sold those loans to Household. It is undisputed that the Purchase Agreement states that all loans purchased under the Agreement received a timely first payment. On the other hand, Coastal argues that the terms of the Purchase Agreement were no longer controlling because the parties' conduct created a different, de facto contract. Specifically, Coastal argues that the warranties – such as the timeliness of the first payment – are no longer controlling, given the parties' conduct after signing the Purchase Agreement. Further, Coastal argues that even if the Purchase Agreement remained valid, the terms of that agreement require Household to provide notice and an opportunity to cure any defects. In response, Household argues that notice and opportunity to cure are not applicable to the present situation because the breach – a late first payment – is impossible to cure. Further, Household contends that any modification to the Purchase Agreement is invalid because, pursuant to the Purchase Agreement itself, such modifications must be done in writing.

A contract modification is a change in one or more respects which introduces new elements into the details of the contract and cancels others, but leaves the general purpose and effect undisturbed. *Int'l Bus. Lists, Inc. v. AT&T Co.*, 147 F.3d 636, 641 (7th Cir.1998). Here, it is undisputed that the parties – in negotiating and transacting the sale of bulk loan packages

11

– did not follow the course of conduct set up in the Purchase Agreement. In fact, the procedure used by the parties for making an offering and proceeding to the final sale was different from the procedure set forth in the Purchase Agreement. However, the end result – that being the purchase by Household of a bulk loan package from Coastal – remained the same regardless of how that sale was conducted. In the present motion, Coastal contends that the terms of the Purchase Agreement were changed, creating a new contract. However, as stated above, a change in the terms of an agreement that does not change the essence of the agreement does not result in a new contract; it results in a modified version of the original agreement. *See id.* Thus, the issue in this case is whether the Purchase Agreement was modified by the parties' conduct. Household claims that, although the parties did not follow the terms of the contract during the course of transacting their business, it is impossible to modify the Purchase Agreement without a written agreement between the parties.

It is undisputed that no changes to the Purchase Agreement were made in writing. Thus, there can be no written modification of the agreement. However, this does not mean there can be no modification. An oral modification of the Purchase Agreement is not precluded. "A contract is validly modified if the party which did not propose the changes is shown to acquiesce in the modification through a course of conduct." *Int'l Bus. Lists*, 147 F.3d at 641 (citing *Maher & Assocs., Inc. v. Quality Cabinets*, 640 N.E.2d 1000, 1007 (Ill. App. Ct. 1994)); *see also United States for Spec. Erectors, Inc. v. Wil-Freds Constr., Inc.*, No. 96 C 2915, 1997 WL 11041, at *3 (N.D. Ill. Jan.7, 1997). Further, an oral modification is possible despite provisions in the Purchase Agreement because "a written contract may be modified by a subsequent oral

12

agreement even when the contract precludes oral modifications." *Will-Freds*, 1997 WL 11041, at *3 (citing *Tadros v. Kuzmak*, 660 N.E.2d 162, 170 (Ill. App. Ct. 1993)). However, the existence of an oral modification – as well as its terms, conditions, and the intent of the parties – are all questions of fact that must be determined by the trier of fact. *Id.* (citing *E.A. Cox Co. v. Road Savers Int'l Corp.*, 648 N.E.2d 271, 277 (Ill. App. Ct. 1995)). *See also Maher & Assocs.*, 640 N.E.2d at 1007 ("Whether the terms of a written contract are modified by acts or conduct is a question of fact for the trier of fact."); *Giannetti v. Angiuli*, 635 N.E.2d 1083, 1090 (Ill. App. Ct. 1994) ("Whether a party's course of conduct waives strict compliance with a contractual provision and results in forfeiture is generally a question of fact; such a question is unsuitable for disposition by way of summary judgment.").

In this case, Coastal claims that the Purchase Agreement was modified by the parties' conduct subsequent to signing the Purchase Agreement. The Purchase Agreement provided specific procedures for transactions between Household and Coastal. Included in these specifics was a list of information which was to be included in the offer to sell. However, it is undisputed that the parties did not follow the procedures, as dictated by the Purchase Agreement, in the sale of many bulk loan packages. On the contrary, the parties developed a more informal way of doing business. As a result, some or much of the information on the loans was not transmitted to Household during the transaction. Regardless, many of these transactions were completed. Thus, the court cannot say, as a matter of law, that the first-payment requirement (as stated in section 4.3 of the Purchase Agreement) was not modified. In fact, it is possible that this provision was changed given the parties' conduct, and especially in light of the fact that

Household often purchased these loans without the complete information required under the Purchase Agreement. Such an issue is material in determining whether the Purchase Agreement, or any modified version of that Agreement, was breached by either party. "[T]he issue of oral modification must be treated, if at all, by the trier of fact and not by the court on this motion for summary judgment." *Wil-Freds*, 1997 WL 11041, at *3. Thus, whether the Purchase Agreement was modified – and the extent of that modification (i.e., which provisions are modified and which remain enforceable) – are questions of fact which are not properly decided on a motion for summary judgment. Accordingly, the court denies Household's motion for summary judgment on its breach of contract claim.

**C.    Coastal's motion for summary judgment on its breach of contract counterclaim**

Coastal also brings a motion for summary judgment arguing that it is entitled to judgment as a matter of law on its counterclaim for breach of contract. This breach of contract claim is based upon the "de facto" contract Coastal alleges was created by the parties' conduct, or the "Agreement as modified by [the parties'] conduct." (Def.'s Counterclaim, ¶ 8.) Specifically, Coastal claims that, under the terms of the modified contract as dictated by the parties' conduct, Household was obligated to purchase a bulk loan package (specifically the July 1999 package) once Coastal accepted Household's offer and cured any deficiencies. Thus, because Coastal had accepted Household's offer for the July 1999 package and subsequently cured the deficiencies, Household was required to purchase the loans in that package. On the other hand, Household claims that there was no Purchase Advice, and, therefore, it was not required to purchase the

package. Moreover, Household contends that the Purchase Agreement allows Household to refuse to complete the sale at the point in which it did.

As stated *supra* Section II.B., the parties' conduct did not give rise to an entirely new contract, but it may have resulted in a modification of the existing Purchase Agreement. However, as also stated above, the terms and conditions of this modified contract are questions of fact, and such determinations are not appropriate for a summary judgment motion. Accordingly, the court denies Coastal's motion for summary judgment on its counterclaim for breach of contract.

Also, in its motion for summary judgment, Coastal argues that the express terms of the Purchase Agreement require Household to provide notice and an opportunity to cure and that, because Household failed to do so, Household's breach of contract claim is precluded. Household argues that such notice was not required because the breach was impossible to cure as the first payment was already late and could not be made timely. However, the court has already found that the conduct of the parties could have resulted in an oral modification of the Purchase Agreement. (*See supra* Sect. II.B.) Again, the extent to which a contract is modified – and the terms and conditions of modification, along with the parties' intention in making such modification – are questions of fact. Thus, the court will not, at the summary judgment stage, attempt to enforce certain provisions of the Purchase Agreement. To the extent that certain terms of the Purchase Agreement are enforceable and others have been modified, that determination must be made by the trier of fact. Thus, Coastal is not entitled to judgment as a matter of law

on its counterclaim for breach of contract. Accordingly, the court denies Coastal's motion for summary judgment on count I of its counterclaim.

### D. Household's motion for summary judgment on Coastal's counterclaim for breach of duty of good faith and fair dealing

In its motion for summary judgment, Household claims that it is entitled to judgment as a matter of law on Coastal's counterclaim for breach of duty of good faith and fair dealing. Coastal's claim is based upon Household's failure to complete the purchase of the July 17 Bulk Loan Package. After several communications between the parties regarding the July 17 package, Household informed Coastal that it would not purchase that package unless Coastal agreed to buy back the Hunter and Kelley loans or to deduct the value of the Hunter and Kelley loans from the purchase price of the July 17 package. Coastal claims that this demand – and Household's failure to complete the transaction when Coastal refused the demand – was a breach of Household's implied duty of good faith and fair dealing. Household contends that the express terms of the Purchase Agreement are controlling, and consequently it had no duty. Further, Household argues that Coastal has no independent cause of action for breach of duty of good faith and fair dealing. The court agrees with Household that there is no independent cause of action.

"Illinois law does not recognize independent claims based on breaches of any implied duties of good faith." *Echo, Inc. v. Whitson, Co.*, 121 F.3d 1099, 1105-06 (7th Cir. 1997). *See also Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000) (quoting *Echo* and finding that the plaintiff could not bring a separate cause of action for breach of implied duty of good faith and fair dealing); *Tuf Racing Prods., Inc. v.*

16

*Am. Suzuki Motor Corp.*, No. 94 C 50392, 1997 WL 811021, at *5 (N.D. Ill. Dec. 29, 1997) ("Under Illinois law, there is no independent cause of action for breach of any implied duty of good faith."). While a duty of good faith and fair dealing guides the dealings of the contracting parties, the proper place for an implied covenant argument is within a breach of contract claim, "not standing alone as its own claim." *Echo*, 121 F.3d at 1106. *See also Borys v. Josada Builders, Inc.* 441 N.E.2d 526, 532 (Ill. App. Ct. 1982). Thus, under Illinois law, Coastal cannot bring an independent claim for breach of an implied duty of good faith and fair dealing. Accordingly, the court finds that Household is entitled to judgment as a matter of law on Coastal's counterclaim for breach of duty of good faith and fair dealing. Therefore, the court grants Household's motion for summary judgment on count II of Coastal's counterclaim.

### E.    Coastal's affirmative defenses

In its motion for summary judgment, Coastal claims that it is entitled to judgment as a matter of law on Household's breach of contract claim. In its answer to Household's complaint, Coastal has alleged that Household's breach of contract claim is waived as a matter of law, or that Household is estopped from bringing a breach of contract claim. Specifically, Coastal argues that (1) Household's noncompliance with the notice obligations of the Purchase Agreement bar Household from enforcing that Agreement; (2) the alleged breaches have been cured as the first payment was made; (3) Household waived its breach of contract claim because it was aware of the late first payment at the time of purchase but did not object; and (4) Household is estopped because it failed to object to the loans at the time of purchase and has, subsequently, accepted numerous payments on those loans which prevents Coastal from taking

17

any collection actions against the borrowers. In its motion for summary judgment, Coastal argues that these defenses entitle it to judgment as a matter of law on Household's breach of contract claim. Household responds that (1) cure is impossible because a late first payment can never be made timely and (2) it was not aware of the untimeliness of the first payments on the loans in question prior to purchase, but that it became aware after purchase and then sought to have Coastal repurchase those loans.

First, with respect to the first two affirmative defenses, as stated above, the court finds that there is a question of fact regarding the modification of the Purchase Agreement. Therefore, whether certain provisions of the contract are enforceable (or whether certain provisions, such as the notice and cure provision of the Purchase Agreement, have been modified) is a question of fact to be decided by the trier of fact.[3] Whether the parties intended to be bound by the Purchase Agreement and to what extent the Purchase Agreement is controlling are questions of material fact which preclude summary judgment on those claims or defenses which seek to enforce certain provisions of the Purchase Agreement.

Next, with respect to waiver, "[a] party to a contract may not lull another into a false assurance that the strict compliance with a contractual duty will not be required and then sue for noncompliance." *Giannetti*, 635 N.E.2d at 1089-90 (quoting *Whalen v. K-Mart, Corp.*, 519 N.E.2d 991, 994 (Ill. App. Ct. 1988)). Thus, Household could have waived its rights under the Purchase Agreement if it knew of the untimely first payments but failed to object at the time of

---

[3]However, the court notes that, if the cure provision were enforceable as a matter of law, such a breach is, in fact, impossible to cure: once a payment is late, it cannot be made timely.

purchase. However, oral modification of a written contract, which could result in a waiver of certain contractual terms, and a defendant's reliance on such waiver are questions of fact which preclude summary judgment. *See Nelson v. Estes*, 507 N.E.2d 530, 533 (Ill. App. Ct. 1987). Moreover, Household disputes that fact that it knew of the lateness of the first payments at the time it purchased the loans at issue. (*See* Pl.'s Supp. 12(m) Statement, ¶ 2.) This is material to determining if any waiver occurred. Thus, there is a question of fact regarding waiver which is to be decided by the trier of fact.

Finally, "[w]hether the circumstances of the parties' conduct results in estoppel to prevent injury to a party ... is also a question of fact to be determined at trial." *Giannetti*, 635 N.E.2d at 1090. Thus, assuming that Household was aware of the lateness of the first payment at the time of purchase, whether Household's failure to object to the loans injured Coastal is a question of fact. Accordingly, none of Coastal's affirmative defenses entitle it to judgment as a matter of law on Household's breach of contract claim.

In sum, the court finds that there is a question of fact regarding both parties' breach of contract claims. Thus, the motions for summary judgment on Household's breach of contract claim and on count I of Coastal's counterclaim are denied. However, the court finds that Coastal cannot bring an independent claim for breach of duty of good faith and fair dealing. Thus, Household is entitled to judgment as a matter of law on that claim. Accordingly, the court grants Household's motion for summary judgment on count II of Coastal's counterclaim.

## III. **CONCLUSION**

For the foregoing reasons, the court denies Coastal's motion for summary judgment in its entirety. Further, the court (1) denies Household's motion for summary judgment on count I of Coastal's counterclaim and (2) grants Household's motion for summary judgment on count II of Coastal's counterclaim.

Date: JUL 12 2001

James H. Alesia
United States District Judge